[No. 15498.   Department Two.   January 9, 1920.]

## Mill & Mine Supply Company, *Appellant,* v. Seattle Frog & Switch Company, *Respondent.*[1]

Sales (68, 75) — Performance or Breach—Tender—Inspection. An offer to buy for plaintiff certain second-hand wire rope to be selected and inspected by defendant at Duluth, accepted by plaintiff, was breached when the cars tendered at Seattle were refused because not inspected and unsatisfactory, where defendant inspected and accepted some of the rope without notifying plaintiff and such inspection was a matter solely between the defendant and the Duluth dealer furnishing the rope.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered February 18, 1919, upon granting a nonsuit, dismissing an action on contract. Affirmed.

*Winfield R. Smith* and *Poe & Falknor,* for appellant.
*C. H. Winders,* for respondent.

Mount, J.—This action was brought to recover damages alleged to have been caused by the breach of a contract for the sale of two hundred tons of wire rope. The case was tried to the court and a jury. At the close of the plaintiff's evidence, the defendant moved the court for a nonsuit upon the ground that the evidence was insufficient to go to the jury. That motion was sustained and the action was dismissed. The plaintiff has appealed.

The sole question is: Was there sufficient evidence to go to the jury?

The facts are in substance as follows: The appellant and the respondent are corporations doing business in this state, in the city of Seattle. Robert Gillespie represented the appellant and Mr. M. J.

[1]Reported in 186 Pac. 1067.

Henehan represented the respondent in the dealings between the two companies. In October, 1916, Mr. Gillespie intended to go east to purchase supplies for his company. At that time Mr. Henehan gave Mr. Gillespie a letter to the Duluth Iron & Metal Company, of Duluth, Minnesota. Mr. Gillespie took this letter and presented it to the Duluth Iron & Metal Company, and on October 27, 1916, the Duluth Iron & Metal Company sent a telegram to Mr. Henehan, representing the Seattle Frog & Switch Company, as follows:

"Mr. Gillespie here. We offer you two hundred tons assorted sizes one and three-eighths and one and quarter and one and one-eighth wire rope, including also six reels one and three-quarter at twenty-five dollars per net ton f. o. b. Duluth. Terms ninety days and four months if desired. Mr. Gillespie will inspect and accept rope on this deal here and he is wiring you a proposition. Please answer him and ourselves promptly so loading can commence. Barde raised prices in this territory."

Upon the same day Mr. Gillespie, representing the appellant, sent from Duluth, Minnesota, the following telegram addressed to the Seattle Frog & Switch Company:

"Will buy two hundred tons good secondhand plow steel wire rope offered to you today by the Duluth Iron and Metal Co. at two and one-half cents per pound f. o. b. Seattle. Terms one thousand dollars per month starting immediately. Will inspect and accept rope here. Wire answer care Spalding Hotel."

This telegram was signed by Mr. Gillespie. On October 31, 1916, the Seattle Frog & Switch Company sent a telegram to Mr. Gillespie as follows:

"Are entering your order according your proposition and wiring Duluth ship your selection."

This was signed by the Seattle Frog & Switch Company. Upon the same day a telegram was sent by the

Seattle Frog & Switch Company to the Duluth Iron & Metal Company at Duluth, as follows:

"Ship to us Seattle via Milwaukee two hundred tons as selected by Gillespie."

After the receipt of these telegrams, Mr. Gillespie inspected and rejected some of the rope in Duluth; but this fact was not made known to the respondent or to Mr. Henehan. Mr. Gillespie thereupon left Duluth and went to Superior and other points. He returned in a few days to Duluth and inspected some of the wire rope in the possession of the Duluth Iron & Metal Company, and accepted one car. In the meantime, the Duluth Iron & Metal Company had shipped three cars of wire rope to the respondent for delivery to the appellant. When the cars arrived in Seattle they were tendered to the appellant. Appellant refused to take the rope on the cars because Mr. Gillespie had not inspected or accepted the same. The respondent thereupon took the rope and disposed of it in the market. Afterwards other cars were shipped, but none of the shipments were received by the appellant. The appellant then brought this action for damages, alleging a breach of the contract.

From the telegrams above quoted, it appears that Mr. Gillespie made the arrangements for the contract with the Duluth Iron & Metal Company in Duluth. He knew that the Duluth company would not sell direct to him, but would sell through its agent, the respondent, in Seattle. Thereupon Mr. Gillespie wired to the respondent in Seattle:

"Will buy two hundred tons good secondhand plow steel wire rope offered to you today by the Duluth Iron and Metal Co. . . . Will inspect and accept rope here. Wire answer care Spalding Hotel."

This was a plain offer to buy two hundred tons of wire rope offered that day to the respondent, appellant agreeing to inspect and accept the rope in Duluth. That offer was accepted by the respondent. Thereafter certain cars of rope were shipped to the respondent by the Duluth Iron & Metal Company for delivery to the appellant. The respondent assumed, of course, that this was the rope purchased, inspected and accepted on October the 27th by the appellant. When the cars of rope were tendered to the appellant, it refused to receive them because the rope had not been inspected and accepted in Duluth, and because the rope was not satisfactory. The place to reject the rope was in Duluth. The acceptance or rejection of the rope was a matter solely between the appellant and the Duluth Iron & Metal Company. When that company shipped the rope *that day* sold to the respondent, the appellant was bound to take it according to the offer to buy. The appellant's refusal was a breach of the contract with the respondent. The appellant sought to show upon the trial that there was a modification of the contract in that the rope might be inspected and accepted in Seattle; but we find no evidence of any such modification. In fact, so far as the respondent is concerned, there was no modification of the contract whatever. The respondent insisted that the appellant should take the wire rope that was shipped to Seattle. The appellant refused to take that rope and thereby breached the contract.

We are satisfied the trial court properly took the case from the jury and dismissed the action.

The judgment is therefore affirmed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.